# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MATTHEW DAVIS,**<br><br>　　**Plaintiff,**<br><br>　　v.<br><br>**MIDLAND CREDIT MANAGEMENT, INC.,**<br><br>　　**Defendant.** | Case No. 16-2111-JAR-JPO |

## MEMORANDUM AND ORDER

On February 19, 2016, Plaintiff Matthew Davis filed this action against Defendant Midland Credit Management, Inc. ("Midland"), alleging a single claim under the Fair Debt Collection Practices Act ("FDCPA") that Midland contacted Plaintiff on January 11, 2016, despite having received notice that he was represented by an attorney, in violation of 15 U.S.C. § 1692b(6). The parties appeared by telephone before Magistrate Judge James P. O'Hara on May 18, 2016, and jointly requested "that a non-standard scheduling order be entered" in this case, and a consolidated case, *Brian Klingensmith v. Midland Credit Management, Inc.*, Case No. 16-2125-JAR-JPO.[1] The parties stipulated to a June 17, 2016 deadline for Defendant to file a motion for summary judgment in this case only,

> addressing only the issue of whether a debtor's notice of retention of legal counsel provided to one debt-collection corporation is sufficient to constitute notice to a sister debt-collection corporation under the Fair Debt Collection Practices Act. To give plaintiff's counsel an opportunity to depose the affiants, plaintiff's response to the motion shall not be due until **September 16, 2016**. Any reply brief by defendant is due **14 days after** the filing of plaintiff's response. All other discovery on liability and damages issues is stayed until U.S. District Judge Julie A. Robinson rules on defendant's motion for summary judgment.[2]

---

[1] Doc. 11 at 2.

[2] *Id.*

1

Pursuant to this Order, Defendant filed its Motion for Summary Judgment (Doc. 14) on June 17, and that motion is fully briefed. However, before responding to the motion for summary judgment, Plaintiff filed a Motion for Leave to File First Amended Complaint (Doc. 16), arguing that Defendant alleged facts in its motion for summary judgment that give rise to new theories of liability under the FDCPA. Defendant opposes this motion, and argues that if the Court is inclined to allow leave to amend, it should award Defendant the costs it incurred in moving for summary judgment as a sanction.

The Court has considered the parties' submissions on both motions and is prepared to rule. Because granting Plaintiff's motion for leave to amend would obviate the need to rule on the motion for summary judgment, the Court considers that motion first. As described more fully below, the Court grants in part and denies in part Plaintiff's motion for leave to amend, allowing Plaintiff leave to substitute a claim under § 1692c(a)(2) for one under § 1692b(6), and finds moot Defendant's motion for summary judgment.

## I.     Standard

Under Rule 15(a), leave to amend a complaint is freely given when justice so requires. Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"[3] Courts may deny leave to amend, however, based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[4]

---

[3] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[4] *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**II.     Factual Background**

The following facts are alleged in Plaintiff's original Complaint and proposed First Amended Complaint, and are assumed to be true for purposes of deciding this motion. The Court also considers the exhibits attached to the original Complaint.[5] Plaintiff incurred a debt through Citibank, N.A. for personal, family, or household services. On or about November 17, 2015, Plaintiff retained counsel Thomas Addleman to assist him in resolving several debts, including the Citibank debt. On December 22, 2016, Addleman sent letters by certified mail to Plaintiff's creditors, including Defendant Midland, notifying them that he was represented by counsel and that Plaintiff disputes the claim.[6] Counsel addressed the letter to Midland at P.O. Box 2036, Warren, MI 48090. On January 4, 2016, "B. Mosely" signed the return receipt for counsel's letter at this Michigan address. Mosely is an employee of Asset Acceptance Corporation ("Asset), which Plaintiff proposes to add as a Defendant. Asset and Midland are sister companies—they are both owned by the same parent organization.

Plaintiff received no notice or objection that the letter was sent to an incorrect address; counsel had previously sent correspondence to Midland at the Michigan address and Plaintiff received responses concerning that correspondence. It was not rejected or otherwise returned to Plaintiff, so he assumed it had been received upon acceptance.

On January 11, 2016, Midland sent a letter directly to Plaintiff at his place of residence acknowledging that he was disputing the Citibank debt, and asking him to submit information in support of his dispute. Eventually, Asset forwarded the notice of representation letter sometime after January 11, 2016.

---

[5] Doc. 1, Exs. 1–3; *see Prager v. LaFaver*, 180 F.3d 1185, 1188–89 (10th Cir. 1999) ; *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[6] Doc. 1, Ex. 1.

Plaintiff proposes the following amended claims for relief under the FDCPA against Midland and Asset: (1) violation of § 1692c(a)(2) by Midland for contacting Plaintiff in connection with the collection of a debt with knowledge that he was represented by counsel; (2) violation of § 1692f by Midland for using unfair means to collect or attempt to collect a debt; (3) violation of § 1692f by Midland for using unconscionable means to collect or attempt to collect a debt; and (4) violation of § 1692e by Asset for using a false, deceptive, or misleading representation or means in connection with the collection of a debt.

### A.      Undue Delay, Bad Faith, and Prejudice

Defendant urges the Court to deny leave to amend because Plaintiff delayed seeking leave until after agreeing to litigate an early summary judgment motion, the amendments are sought in bad faith, and it will suffer prejudice as a result of the time and cost spent filing its motion for summary judgment based on the parties' stipulation at the Scheduling Conference.

Undue delay alone is sufficient to deny a motion to amend; there need not be a showing of prejudice.[7] In the Tenth Circuit, undue delay may be found "when the party filing the motion has no adequate explanation for the delay."[8] The Court may also deny leave to amend if the moving party "knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint."[9] While the Court acknowledges Defendant's surprise at Plaintiff's motion filed after the parties had agreed to litigate the notice issue on summary judgment, it declines to deny leave to amend on these grounds. First, the Scheduling Order suggests that the parties agreed to litigate an early summary judgment motion before discovery was complete on the narrow issue of "whether a debtor's notice of retention of

---

[7] *See, e.g.*, *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1229–30 (D. Kan. 2002).

[8] *Minter v. Primer Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).

[9] *Cuenca*, 205 F. Supp. 2d at 1230.

4

legal counsel provided to one debt-collection corporation is sufficient to constitute notice to a sister debt-collection corporation under the Fair Debt Collection Practices Act." Yet the summary judgment motion went beyond this issue and argued that the particular statutory violation alleged in the Complaint, § 1692b(6), does not apply. Plaintiff moves to amend to replace this claim with a claim under § 1692c(a)(2), and characterizes the reference to § 1692b in the original Complaint as a scrivener's error. Defendant insists that it pointed out this statutory defect to Plaintiff before the Scheduling Conference, but Plaintiff denied any deficiency and waited until after the summary judgment motion was filed to seek leave to amend.[10] In the course of briefing, both parties have accused the other of bad faith.

It is true that Defendant mentioned in a March 23 email to Plaintiff that it is "unclear how that section is applicable" given that § 1692b(6) concerns location information. This comment is in a parenthetical within a lengthy email to Plaintiff's counsel arguing that Midland had informed Plaintiff of the correct address for correspondence in California, and that it lacked knowledge on January 11 that Plaintiff was represented by counsel. Later in May, Defendant notified Plaintiff that it believed the § 1692b(6) violation in the original Complaint was deficient for two reasons: (1) because Midland did not have actual notice of the notice of representation; and (2) because the January 11 letter "was not a communication 'in connection with the collection of any debt,'" but was instead a response to Plaintiff's dispute.[11] This second deficiency is not the same basis for summary judgment argued in Defendant's motion. Defendant's motion instead argues that Plaintiff's § 1692b(6) claim fails because that section only applies to communications with third parties, whereas this communication was sent directly to the consumer, and because it applies to a communication for the purpose of acquiring location information about the Plaintiff, which was

---

[10] Doc. 19, Ex. A-2.

[11] Doc. 19, Ex. A-3 at 2.

5

not the purpose of the January 11 letter. The Court cannot find that Plaintiff was placed on clear notice either by email, or at the Scheduling Conference, that this ground would be argued in the June 17 summary judgment motion. Moreover, this is not a situation where Plaintiff was aware of "facts" upon which the proposed amendments were based but failed to include them in the original Complaint. Plaintiff's proposed amendments are derived from facts learned in Defendant's motion for summary judgment. Likewise, this case does not represent an instance of "repeated" failures to cure deficiencies in earlier amendments. This is Plaintiff's first motion for leave to amend.

Moreover, the motion for leave to amend was not filed out of time; no deadlines have been set for amendments to the pleadings. The original Complaint was filed in February 2016, only five months before the summary judgment motion was filed. Had the summary judgment motion dealt solely with the notice issue, perhaps Defendant's surprise by Plaintiff's motion for leave to amend would be more understandable. But given Defendant's argument that Plaintiff's claim fell under the wrong section of the FDCPA, it should not have been come as a surprise that Plaintiff would seek leave to cure the deficiency and cite a different statutory provision. Under the standard set forth in Rule 15(a), the Court finds that leave should be freely granted in this case. The Court also declines to impose sanctions.[12]

### B. Futility

Defendant further argues that Plaintiff's proposed amendments are futile. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[13] To survive a

---

[12] Under 28 U.S.C. § 1927, "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." The Court does not find that Plaintiff's counsel should be subject to sanctions under this standard.

[13] *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013).

motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[14]  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[15]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[16]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[17]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[18]

### 1. Claim I under § 1692c(a)(2)

Under § 1692c(a)(2), a debt collector may not contact a consumer "in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address."  Defendant argues that this claim is futile because its January 11, 2016 letter is not a communication in connection with the collection of a debt.  Instead, Defendant argues that the letter merely seeks to resolve Plaintiff's dispute of his Citibank debt with the credit bureaus.

---

[14]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[15]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[16]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[17]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[18]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The FDCPA "does not apply to *every* communication between a debt collector and a debtor."[19] In order for a communication to be in connection with the collection of a debt, "an animating purpose of the communication must be to induce payment by the debtor."[20] But even where a communication does not directly demand payment, if it "aims to make such an attempt more likely to succeed . . . [it] has the requisite connection."[21] Courts consider several factors in determining whether a communication was made in connection with the collection of a debt:

> Those factors include the nature of the parties' relationship and the purpose and context of the communication. The factors also include whether the communication: 1) contains a demand for payment; 2) is from a debt collector; 3) demands payment or states a balance due; 4) states that it is an attempt to collect a debt; 5) threatens consequences if the plaintiff does not pay; 6) was sent in response to an inquiry or request from the plaintiff; 7) states that the sender is not authorized to accept payment; and 8) is part of a strategy to make payment more likely or was made to induce the debtor to settle his or her debt.[22]

Considering these factors, the Court cannot determine as a matter of law that Midland's January 11 letter to Plaintiff was not in connection with the collection of a debt. While it is true that the letter requests information from Plaintiff in support of his dispute of the debt to the credit bureau, it is from a debt collector and states a balance due in two different places. The letter indicates at the end that "[t]his account may still be reported on your credit report as unpaid."[23] Moreover, Plaintiff could plausibly assert based on the language in this letter that it was made to induce Plaintiff to settle his debt. It seeks to reach a "quick resolution," and asks Plaintiff to submit documentation in support of his dispute. It states that Plaintiff must provide an

---

[19] *Grden v. Leikin Ingber Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); *Gburek v. Litton Loan Serv. L.P.*, 614 F.3d 380, 384–85 (7th Cir. 2010).

[20] *Grden*, 643 F.3d at 173; *Gburek*, 614 F.3d at 385.

[21] *Grden*, 643 F.3d at 173.

[22] *McDermott v. Randall S. Miller & Assocs., P.C.*, 835 F. Supp. 2d 362, 370–71 (E.D. Mich. 2011) (construing *Grden*, 643 F.3d at 173 and *Gburek*, 614 F.3d at 384–85).

[23] Doc. 1, Ex. 3 at 1.

8

explanation about why he disputes the claim in order for Midland to reinvestigate. But most damaging to Defendant's position is the bolded text on the back of the January 11 letter that reads: "Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose."[24] Given these facts, and the applicable standard at this stage of the proceedings, Plaintiff's proposed amended complaint plausibly alleges a claim under § 1692c(a)(2).

### 2. Claim 4 under § 1692e Against Asset

In Claim 4, Plaintiff alleges that Asset violated § 1692e(2)(B) by falsely representing "services rendered" when its agent represented that it had actual authority to receive mail on behalf of Midland by signing the return receipt for Plaintiff's notice of representation. Defendant argues that this claim would be subject to dismissal because signing for a letter cannot constitute a "representation or means" in connection with the collection of any debt. Moreover, because Asset was not collecting Plaintiff's debt, Midland argues it cannot be held liable under this provision, which only applies to a "debt collector."

This statutory provision prohibits the "use [of] false, deceptive, or misleading representation or means in connection with the collection of any debt" by a "debt collector."[25] Section 1692e applies even if the false representation is unintentional.[26] The Court agrees that Plaintiff has not alleged enough facts to sustain a cause of action under this provision. Assuming the facts alleged are true, Asset's misrepresentation was its agent's signature on the return receipt addressed to Midland for the notice of representation. A certified mail return receipt lacks any of

---

[24] *Id.* at 2.

[25] 15 U.S.C. § 1692e.

[26] *See, e.g.*, *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991 (7th Cir. 2003).
9

the indicators of a communication made in connection with the collection of a debt.[27] It contains no demand for or even mention of payment, there are no threats about the consequences of nonpayment, and it could not reasonably be part of a strategy to induce payment or settlement of the debt. There are no factual allegations that plausibly give rise to an inference that the return receipt's animating purpose was to induce payment by the debtor. In fact, this was not a representation or communication initiated by Midland or Asset, but was a signature on a U.S. Postal Service card requested by Plaintiff. The only representation on the return receipt was that someone named B. Mosely accepted the mail. The Court cannot find that such conduct plausibly gives rise to a claim under § 1692e. Accordingly, the Court finds that Plaintiff's attempt to assert a claim under § 1692e against Asset is futile.

### 3. Claims 2 and 3 under § 1692f

In Claims 2 and 3, Plaintiff alleges that Midland violated § 1692f, which prohibits a debt collector from using "unfair or unconscionable means" to collect or attempt to collect any debt. Claim 2 alleges that Midland used unfair means to collect a debt by consenting to a procedure whereby Asset would forward mail from its Michigan address to Midland's preferred address, thus delaying Plaintiff's notification of representation letter and depriving him of "one of the crucial benefits of [his] representation."[28] Claim 3 alleges that Midland used unconscionable means to collect or attempt to collect a debt by permitting its agent to delay delivery of the notice of representation letter and rely on that delay in contacting Plaintiff.

The statute contains several examples of conduct that constitutes "unfair" or "unconscionable" conduct:

---

[27]*See* Doc. 1, Ex. 2.
[28]Doc. 16-1 ¶ 36.

10

> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
> (2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.
> (3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.
> (4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.
> (5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
> > (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
> > (B) there is no present intention to take possession of the property; or
> > (C) the property is exempt by law from such dispossession or disablement.
> (7) Communicating with a consumer regarding a debt by post card.
> (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.[29]

This is a nonexclusive list of examples, as "§ 1692f 'allows the court to sanction improper conduct that the FDCPA fails to address specifically.'"[30]

Plaintiff does not allege any of the improper acts listed as examples in § 1692f, but the bigger problem is that Plaintiff fails to allege misconduct that goes beyond Midland's other alleged FDCPA violations. Instead, the allegations that pertain to Claims 2 and 3 are identical to the alleged violation by Midland in Claim 1. Accordingly, Plaintiff has failed to state a claim

---

[29]15 U.S.C. § 1692f.

[30]*Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006) (quoting *Adams v. Law Offcs. Of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996)).

under § 1692f, and the proposed amendment is denied as futile to the extent Plaintiff seeks to add these claims.

In sum, the Court finds that Plaintiff should be granted leave to amend to add the factual allegations set forth in the proposed amended complaint, and to substitute his claim under § 1692b(6) for a claim under § 1692c(a)(2).  The motion for leave to amend is otherwise denied, as his other proposed amendments would be subject to dismissal.  Plaintiff is ordered to file his Amended Complaint no later than December 16, 2016.  As a result of this amendment, Defendant's motion for summary judgment is moot.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 16) is granted in part and denied in part.  Plaintiff is ordered to file his Amended Complaint in accordance with this Order no later than December 16, 2016.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 14) is **moot**.

**IT IS SO ORDERED.**

Dated: December 7, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE